**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CEPIA, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>UNIVERSAL PICTURES VISUAL PROGRAMMING LIMITED,<br><br>and<br><br>UNIVERSAL PICTURES INTERNATIONAL ENTERTAINMENT,<br><br>*Defendants.* | Cause No. 4:15-cv-01181<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Cepia, LLC ("Cepia"), for its Complaint against Defendants Universal Pictures Visual Programming Limited ("Universal Programming") and Universal Pictures International Entertainment ("Universal Entertainment") (together "Universal International"), states as follows:

**NATURE OF THE ACTION**

1. This is an action seeking monetary damages and other appropriate remedies arising from Universal International's breach of contract, conversion, and breach of the duty of good faith and fair dealing in connection with Universal International's marketing and distribution of two animated children's movies produced by Cepia.

**THE PARTIES**

2. Cepia is a limited liability company incorporated under the laws of Missouri with its principal place of business in St. Louis, Missouri.

3. Cepia is in the business of developing, manufacturing, and selling innovative toys, including the toy line that inspired the movies that are the subject of this lawsuit.

4. Universal Programming is a foreign corporation with its principal place of business in London, England.

5. Universal Entertainment is a foreign corporation with its principal place of business in London, England.

6. Universal Programming and Universal Entertainment are in the business of developing, creating, producing, marketing, distributing, and licensing films.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Cepia and Universal International are citizens of different countries and the amount in controversy exceeds $75,000, exclusive of costs and interest.

8. Universal Programming and Universal Entertainment do business in interstate commerce in the United States, including within this judicial district. Universal Programming and Universal Entertainment marketed, distributed, and sold Cepia's movies without authorization, causing harm to Cepia in this judicial district.

9. This Court has personal jurisdiction over Universal Programming and Universal Entertainment by virtue of their doing business with Cepia, which is located within this judicial district, along with their commission of tortious acts that have an effect within this judicial district. Moreover, Missouri is designated as the jurisdiction to administer the Distribution Agreement at issue, and the law of Missouri applies to the Distribution Agreement.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c).

## FACTS APPLICABLE TO ALL COUNTS

### A. Cepia's Toy Line and Movies

11. In the fall of 2008, Cepia's founder and CEO, Russell Hornsby, along with several employees of Cepia conceived of the idea of a unique toy line featuring intelligent motorized animals that would move and make random noises on their own (the "Toy Line"). The animals would be designed to sleep, move, and play within a whimsical habitat created via different play sets and accessories.

12. Cepia expended considerable time, money and effort in developing its Toy Line and related marketing strategy.

13. The Toy Line was initially introduced in stores nationwide throughout the United States and in the United Kingdom in the fall of 2009 under the trademark ZhuZhu Pets.®

14. The Toy Line was an immediate and phenomenal success in the marketplace with record sales for the 2009 Christmas selling season. The Toy Line was widely recognized by third parties in the news, on the Internet, in social media circles and via other forms of communication as one of the "hottest toys" of the year.

15. Since initial introduction, the Toy Line has been heavily promoted by Cepia through television and print advertising, as well as Internet and social media promotional activities.

16. Cepia launched the Toy Line internationally in 2010, having established distribution networks throughout much of Europe, Asia, Australia, New Zealand, and North and South America.

17. Consistent with its plans, Cepia expanded the line for 2010 to include additional hamster characters, play sets and accessories, as well as a series of woodland creatures, all sold under the "ZhuZhu Pets®" trademark.

18. Cepia also introduced new "combat" hamsters and related play sets and accessories intended to appeal to boys under the Kung Zhu® trademark.

19. Both the ZhuZhu Pets® and Kung Zhu® brands fall within Cepia's Zhu-niverse™ brand of toys.

20. Cepia developed an expansive "Zhu-niverse" of Zhu-themed games, music, website, and videos to ensure that children and parents would learn about and become interested in the various "Zhu" worlds.

21. As the "Zhu-niverse" expanded, it became a crucial part of Cepia's business model.

22. The games, music, websites, and videos showcased new Zhu worlds while promoting Zhu products and bolstering sales of the Toy Line. The new Zhu worlds matured and the music, websites, and videos created to drive Zhu-niverse® toy sales became independently valuable assets.

23. In 2011, Cepia wanted to further capitalize on the value of the Zhu-niverse® by marketing and distributing two feature-length animated children's movies featuring the ZhuZhu Pets® and Kung Zhu® characters.

24. Cepia produced two movies, *Quest for Zhu* and *Amazing Adventures of Zhu* (previously known as *Kung Zhu*) (together, the "Movies"). Cepia invested approximately $4,000,000 in production costs for *Quest for Zhu* and $4,300,000 for *Amazing Adventures of Zhu.*

**B. Cepia's Distribution Agreement with Universal International**

25. In or around April 2011, Universal International proposed that it could effectively market and distribute the Movies internationally for Cepia.

26. In its pitch to Cepia, Universal International touted its "dedicated and passionate children's teams in every market" and its commitment to "do a great job" marketing and distributing Cepia's valuable Movies worldwide.

27. Based upon these representations, Cepia selected Universal International to assist in the international marketing and distribution of the Movies.

28. Universal International's dedication to the successful distribution of the two movies was especially important to Cepia because Cepia had invested significant time, effort and money in the production of the Movies and wanted to not only recoup its investment but make a reasonable profit.

29. On April 18, 2011, Cepia and Universal Programming entered into a Distribution Agreement in which Cepia granted Universal Programming three years of exclusive distribution rights in certain international territories for both movies. A copy of the fully executed Distribution Agreement ("Agreement") is attached hereto as Exhibit A.

30. Under the Agreement, Universal Programming would earn certain fees and advance certain costs before paying to Cepia the balance of the sales revenues generated as a result of the distribution of the Movies.

31. Universal Programming agreed to pay Cepia the balance of any sales revenues owed to Cepia on a quarterly basis.

32. Additionally, Universal Programming was obligated to make quarterly reports to Cepia of detailed sales figures, returns, costs, and fees.

33. Maintaining control over the marketing and distribution of the Movies was of critical importance to Cepia as evidenced by the terms of the parties' Agreement.

34. Significantly, the Agreement provided Cepia with express, absolute, and final authority to preapprove the marketing and packaging of the Movies:

> **Marketing:** . . . Uni[versal Programming] to recommend a marketing plan for each territory and Cepia to have final approval over such marketing plans. Uni[versal Programming] to execute such marketing plans, after Cepia's approval.
>
> **Approvals:** a. In all territories Cepia will have final approval over all dubbing and marketing costs; Uni[versal Programming] will propose costs to Cepia in advance and Cepia will give pre-approvals per its discretion. b. Uni[versal Programming] will advise Cepia on how best to market and package the movies; Cepia will have final approval over all marketing and packaging.

35. On June 6, 2011, Universal International presented Cepia with an initial sales and cost forecast for distribution of the first Movie, *Quest for Zhu.*

36. Less than a month later, Universal International presented Cepia with the marketing plan for *Quest for Zhu*.

37. The marketing plan prepared by Universal International for *Quest for Zhu* was detailed and demonstrated a significant amount of research had been employed to develop the plan.

38. Cepia approved the marketing plan for *Quest for Zhu.*

39. On February 3, 2012, Universal International presented Cepia with a sales and cost forecast for distribution of the second Movie, *Amazing Adventures of Zhu.*

40. The forecast for *Amazing Adventures of Zhu* consisted of only four slides, which did not include any explanation or reasoning for the projected sales figures.

41. The forecast for the *Amazing Adventures of Zhu* also contained errors and only projected profits for limited territories.

42. In response, Cepia only authorized Universal International to proceed with a limited distribution plan for the *Amazing Adventures of Zhu* in Australia, New Zealand, the United Kingdom, France, and certain licensee territories on the condition that Universal International submit an acceptable marketing plan to Cepia that would adequately and profitably support the limited distribution of the *Amazing Adventures of Zhu*.

43. On March 25, 2012, Cepia and Universal International met in London to discuss marketing plans for the limited distribution of *Amazing Adventures of Zhu*.

44. On May 31, 2012, after several requests by Cepia for an acceptable marketing plan, Universal International assured Cepia that it would submit a marketing plan to fit Cepia's vision and strategy for *Amazing Adventures of Zhu*, consistent with their discussions during the London meeting.

45. Universal International did not send the promised proposal for a marketing plan for the *Amazing Adventures of Zhu* to Cepia until June 27, 2012.

46. Universal International's marketing plan for *Amazing Adventures of Zhu* failed to include viable cross-promotional strategies, cost-effective supplemental strategies, and trade marketing tactics, all of which Cepia believed to be necessary to an acceptable plan.

47. The marketing plan for *Amazing Adventures of Zhu* included only summary figures without support or detail.

48. The marketing plan appeared to increase marketing to a level that eliminated any profits. For example, the increased sales summary figures of the "revised plan" projected a net profit to Cepia of almost $30,000 less than the plans discussed at the London meeting.

49. The marketing plan for *Amazing Adventures of Zhu*, which among other things eliminated any profits to Cepia, was not acceptable to Cepia.

50. On July 2, 2012, Cepia expressly rejected the plan pursuant to its right to review and pre-approve a marketing plan before the distribution of the Movies under the terms of the Agreement.

51. Universal International did not present Cepia with an alternate marketing plan.

**C. Universal International's Secret and Unauthorized Distribution of *Amazing Adventures of Zhu***

52. Late in 2012, Cepia began hearing rumors related to the unauthorized distribution of the second Movie, *Amazing Adventures of Zhu.*

53. Through its own investigation, Cepia learned that Universal International had distributed the *Amazing Adventures of Zhu* to at least two television broadcasters without Cepia's knowledge or approval.

54. Prior to Cepia learning of the unauthorized sale and distribution of the *Amazing Adventures of Zhu*, Universal International had not advised Cepia of its intent to do so, or sought authorization from Cepia to do so as they are required to do under the express terms of the Agreement.

55. To date, Universal International has not provided a timely and full accounting of revenues generated by the unauthorized distribution of the second Movie, the *Amazing Adventures of Zhu*.

56. Universal International's unilateral actions were especially harmful because the airing of the *Amazing Adventures of Zhu* on television destroyed the potential DVD/Blu-Ray market for this second Movie.

57. Universal International knew that the airing of the *Amazing Adventures of Zhu* on television before the release of a DVD would destroy the potential DVD market for the second Movie based upon its own assertion that "airing a one off-feature on TV before the DVD/Blu-

Ray release hurts the sales potential massively (loss of support at retail, loss of consumer interest)."

58. Universal International also harmed Cepia in that its unauthorized release of the *Amazing Adventures of Zhu* for television led to its availability on the Internet for free download.

59. Upon information and belief, Universal International took no steps to protect this important asset belonging solely to Cepia even though it knew that the *Amazing Adventures of Zhu* would lose significant value once it was aired on television.

60. As a result, Universal International's unauthorized distribution of the *Amazing Adventures of Zhu* has caused irreparable harm to Cepia's ability to obtain a reasonable return on its investment or even to recoup its production costs for the Movies.

61. To date, Universal International continues to wrongfully retain all revenues generated as a result of the unauthorized distribution of the *Amazing Adventures of Zhu*, and has improperly refused to account for these revenues.

62. Additionally, Universal International has refused to provide timely and complete quarterly reports that would allow Cepia to accurately calculate the amount of money due from Universal International for the sales of the Movies.

**Count I**

**(Breach of Distribution Agreement Against Universal Programming-Unauthorized Distribution of *Amazing Adventures of Zhu*)**

63. Cepia incorporates herein by reference the allegations contained in paragraphs 1 through 62 as if fully set forth herein.

64. On April 18, 2011, Cepia and Universal Programming entered into the Agreement. *See* Exhibit A.

65. Under the terms of the Agreement, Universal Programming agreed to market and distribute Cepia's Movies, but only after first obtaining final approval of a marketing plan from Cepia.

66. Universal Programming marketed and distributed Cepia's second movie, *Amazing Adventures of Zhu*, for use by television networks in Brazil and France without authorization from Cepia to do so.

67. Universal Programming never informed Cepia of its intentions to market and distribute *Amazing Adventures of Zhu* in this manner.

68. Universal Programming breached the Agreement by secretly marketing and distributing *Amazing Adventures of Zhu* without authorization from Cepia.

69. Universal Programming's distribution of *Amazing Adventures of Zhu* to television networks in Brazil and France before the movie had been distributed in DVD/Blu-ray formats significantly devalued *Amazing Adventures of Zhu* and precluded Cepia from generating revenues from the DVD/Blu-Ray market both in Brazil and France and also in other parts of the world market as well.

70. Cepia substantially performed all of its obligations under the Agreement and was acting in conformity with the Agreement at all times.

71. As a result of Universal Programming's breach of the Agreement, Cepia has been damaged and will continue to sustain damage.

72. Cepia is entitled to recover these damages from Universal International.

**Count II**
**(Breach of Distribution Agreement Against Universal Programming-**
**Failure to Pay Revenues Owed to Cepia)**

73. Cepia incorporates herein by reference the allegations contained in paragraphs 1 through 72 as if fully set forth herein.

74. On April 18, 2011, Cepia and Universal Programming entered into the Agreement. *See* Exhibit A.

75. Under the terms of the Agreement, Universal Programming agreed to market and distribute both of Cepia's Movies.

76. Universal Programming agreed to pay Cepia revenues realized in connection with the sales of Cepia's Movies, less certain fees to be retained by Universal Programming.

77. Universal Programming generated revenue in connection with its sales and distribution of Cepia's Movies.

78. Universal Programming owes Cepia the revenues realized pursuant to the Agreement, less any fees to be retained by Universal Programming.

79. Upon information and belief, the sales revenues owed to Cepia in connection with both Movies, as of June 30, 2015, were at least $728,679.

80. Universal Programming has refused to pay Cepia the revenues owed to Cepia under the Agreement and is in breach of the Agreement.

81. Cepia substantially performed all of its obligations under the Agreement.

82. As a result of Universal Programming's breach of the Agreement, Cepia has been damaged and will be further damaged by Universal Programming's breach of the Agreement.

**Count III**
**(Conversion Against Universal Programming and Universal Entertainment)**

83. Cepia incorporates herein by reference the allegations contained in paragraphs 1 through 82, as if fully set forth herein.

84. Cepia produced and owns all rights in two animated children's movies: *Quest for Zhu* and *Amazing Adventures of Zhu*.

85. Universal International misappropriated and converted the movie *Amazing Adventures of Zhu*, to the exclusion of Cepia's interests and rights in the movie, when without authorization and in secret, it distributed the movie to television networks in Brazil and France.

86. The Agreement between the parties required Universal International to obtain Cepia's approval of all marketing of the Movies before Universal International was authorized to sell or distribute the Movies.

87. Cepia did not authorize Universal International to distribute *Amazing Adventures of Zhu* to television networks in Brazil and France.

88. Universal International did not even advise Cepia that it intended to distribute *Amazing Adventures of Zhu* for airing on television or give Cepia any opportunity to object or otherwise protect its interest in its property.

89. Universal International's actions were an unauthorized abrogation of Cepia's absolute right of ownership and possession of the Movie, *Amazing Adventures of Zhu*.

90. Universal International intended to exercise control over *Amazing Adventures of Zhu* to the exclusion of Cepia's interests and rights in the movie.

91. Upon learning of Universal International's unauthorized distribution of the *Amazing Adventures of Zhu*, Cepia immediately demanded that Universal International refrain from any further unauthorized distribution even though the damage to Cepia's valuable asset was

done, and demanded an accounting of the revenues generated by the unauthorized distribution of Cepia's Movie.

92. Universal International refused to account for the revenues or remit them to Cepia and to date, Universal International continues to refuse to provide an accounting of those revenues.

93. Universal International converted the movie *Amazing Adventures of Zhu* for its own purposes.

94. As a result of Universal International's conversion of the movie *Amazing Adventures of Zhu*, Cepia has been damaged and will be further damaged by Universal International's conduct.

95. Cepia is entitled to punitive damages because Universal International's actions in misappropriating and converting the movie were willful, wanton, and outrageous because of Universal International's evil motive or reckless indifference to the rights of others including, among other things, their attempts to conceal their unauthorized actions.

**Count IV**
**(Breach of Implied Duty of Good Faith and Fair Dealing in Distribution Agreement Against Universal Programming)**

96. Cepia incorporates herein by reference the allegations contained in paragraphs 1 through 95 as if fully set forth herein.

97. On April 18, 2011, Cepia and Universal Programming entered the Agreement. *See* Exhibit A.

98. Universal Programming occupied a position of superior knowledge and power with regard to the marketing of the Movies that were the subject of the Agreement.

99. A duty of good faith and fair dealing was implied by operation of law in the Agreement.

100. Cepia substantially performed all of its obligations under the Agreement.

101. At a minimum, Universal Programming's duty of good faith and fair dealing required it to refrain from taking actions that would deny Cepia its expected benefits of the Agreement.

102. Cepia negotiated the express, absolute, and final approval over all marketing and distribution of the Movies as part of the Agreement, which was reduced to writing and known to Universal Programming.

103. Universal Programming knew that this level of marketing control was essential to Cepia's business model.

104. Universal Programming acted in bad faith and materially breached its implied duty of good faith and fair dealing by:

   a. Failing to provide an acceptable marketing plan that balanced the need for profitability with the costs associated with attaining that level of profitability;

   b. Failing to provide notice to Cepia of its intent to distribute the second Movie for television viewing before the DVD/Blu-Ray market so that Cepia could object or take steps to prevent the unauthorized distribution; and

   c. Distributing the *Amazing Adventures of Zhu* without authorization in direct contravention of the express terms of the Agreement.

105. Universal Programming's acts and omissions evaded the spirit of the Agreement and denied Cepia the expected benefits of the Agreement.

106. By taking actions in breach of its duty of good faith and fair dealing, Universal Programming showed complete indifference to or conscious disregard for the rights of others. Universal Programming's actions were willful, wanton, and outrageous because of its evil motive or reckless indifference to the rights of Cepia, entitling Cepia to punitive damages to deter Universal Programming and others from like conduct in the future.

**RELIEF SOUGHT ON ALL COUNTS**

WHEREFORE, Cepia prays for an Order and Judgment against Universal Entertainment and Universal Programming (together "Universal International") as follows:

A. Entering judgment against Universal International on all counts;

B. Finding that Universal International, its officers, agents, servants and employees and all others acting in concert or participation with Universal International be permanently enjoined from further offering for sale, advertising, promoting, copying, distribution, or use of the second Movie, *Amazing Adventures of Zhu;*

C. Finding that Universal International pay to Cepia an amount that this Court determines is fair to compensate Cepia for Universal International's breaches of contract, conversion, and breach of the duty of good faith and fair dealing, including an award of punitive damages for the wanton and willful misconduct of Universal International;

D. Awarding Cepia its costs, attorneys' fees, and pre-judgment interest; and

E. Such other and further relief as the Court deems proper and necessary.

        Respectfully Submitted,

**STINSON LEONARD STREET LLP,**

Date: July 31, 2015

By: *__/s/ B. Scott Eidson__*

B. Scott Eidson, #57757MO
Sandra J. Wunderlich, #39029MO
7700 Forsyth Boulevard, Suite 1100
St. Louis, MO 63105
(314) 259-4500 (telephone)
(314) 259-4599 (facsimile)
scott.eidson@stinsonleonard.com
sandra.wunderlich@stinsonleonard.com

***Attorneys for Plaintiff Cepia, LLC***